IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00885-BO

ELISA B. AMMONS,

          Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

**ORDER**

This matter is before the Court on the parties' cross-motions for judgment on the pleadings [D.E. 15, 20]. For the reasons detailed below, plaintiff's motion is GRANTED and defendant's motion is DENIED. The decision of the Commissioner is REMANDED for further consideration.

## **BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 2, 2010, alleging a disability beginning on September 10, 2005, subsequently amended to February 20, 2010. The claim was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on July 26, 2013. In a decision dated November 4, 2013, the ALJ found that plaintiff was not disabled. Tr. 19–29. The Appeals Council denied plaintiff's request for review on October 28, 2014, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1–6. Plaintiff commenced this action and filed a complaint pursuant to 42 U.S.C. 405(g) on December 22, 2014. [D.E. 6].

## MEDICAL HISTORY

Plaintiff has a medical history that includes diabetes mellitus, carpal tunnel syndrome, neuropathy, degenerative disc disease, and obstructive sleep apnea. Plaintiff experienced chronic cellulitis, lesions, swelling, and stasis dermatitis as a result of her conditions. She frequently complained of pain and numbness in her extremities with significant breakdown in her skin.

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's

2

impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

After finding that the plaintiff had not engaged in any substantial gainful activity since her alleged onset date at step one, the ALJ determined that plaintiff's conditions of obesity, carpal tunnel syndrome, diabetes mellitus, neuropathy, degenerative disc disease, and obstructive sleep apnea were severe impairments at step two. Tr. at 21. The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or equaled a listing at step three. *Id.* at 22. The ALJ determined that the plaintiff had an RFC to perform a reduced range of light work with the following exceptions: can occasionally push and pull with the dominant right upper extremity; can never climb ropes, ladders, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, and crouch but can never crawl; and can frequently handle and finger with both upper extremities. *Id.* at 23. At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a sales clerk or a department manager. *Id.* at 28. At step five, the ALJ found that, considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing, including ticketer, paper inserter, and return clerk/sorter. *Id.* at 29. Thus, the ALJ found that plaintiff was not disabled as of the date of his decision. *Id.*

3

Plaintiff alleges that the ALJ improperly determined her RFC by failing to perform a "function-by-function" evaluation. *See Mascio v. Colvin*, 780 F.3d 632, 635-36 (4th Cir. 2015). In evaluating RFC, the ALJ is to "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including physical and mental abilities. SSR 96-8p.

Here, the ALJ erred in assessing plaintiff's RFC. An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p). A proper RFC is critical, and "[w]ithout a careful consideration of an individual's functional capacities to support [a residual functional capacity] assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* (quoting SSR 96–8p).

During the hearing before the ALJ, plaintiff testified that she had difficulty sitting and standing for long periods of time because of swelling in her legs and feet. She stated that she had to adjust positions every 15 minutes or lie down due to back and leg pain. She also stated that prolonged sitting made her legs swell and, consequently, she kept them elevated most of the day to avoid swelling. Plaintiff stated that she had loss of sensation in her hands and feet, which felt like pins and needles, as a result of which she was unable to use her hands more than 5–10 minutes and could not open jars or bottles. Plaintiff testified that she was limited in her activities

of daily living, able only to put clothes in the washing machine. She left all other housework to other family members. She also reported decreased energy levels.

Plaintiff's long-time treating physician, Dr. Ibrahim Oudeh, opined that plaintiff: could stand and sit for 15 minutes at a time; could lift no more than five pounds; could do no more than occasional bending, stooping, balancing, fine and gross manipulations bilaterally, and lift her arms overhead; and that she needed to elevate her legs frequently throughout the day

The ALJ discounted both plaintiff's subjective allegations and Dr. Oudeh's opinions, finding that were unsupported by the evidence which showed largely normal examinations with some paresthesias and diabetes that was getting under better control. Despite the ALJ's conclusions, however, the medical evidence supports both plaintiff's allegations and Dr. Oudeh's opinion. Plaintiff's medical records demonstrate the following complaints, findings, and diagnoses: edema and hyperpigmentation in her lower extremities (March 2009); cellulitis with lesions and edema in both legs (July 2009); extremities demonstrated erythema, edema and cellulitis with drainage (August 2009); right hand and arm pain and diabetes mellitus with neuropathy (December 2009); cellulitis with abscesses; uncontrolled diabetes and pain distribution and paresthesias consistent with neuropathy; her right leg was erythematic and draining with lesions and worsening right hand numbness (January 2010); swelling, objective loss of sensation in her hands, and poorly controlled diabetes (February 2010); edema in both legs with ulcers and stasis dermatitis (September 2010); poorly controlled diabetes mellitus and left leg stasis dermatitis (January 2011); lower leg discoloration with ulcers and scabs as well as weakness and loss of sensation in her right hand (April 2011); swelling in her hands, feet, and legs with blisters and lesions and uncontrolled diabetes (May 2011); hand pain and right leg lesions (August 2011); diabetes mellitus with peripheral neuropathy, congestive heart failure,

5

and chronic lumbar pain (October 2011); edema and lesions in her left leg and improved, but still uncontrolled, diabetes (February 2012); and uncontrolled diabetes (August 2012).

The Commissioner faults plaintiff for "cherry-picking" the evidence to support her claims. However, the focus of both the Commissioner and the ALJ on the limited evidence where plaintiff's conditions were improving and more normal findings were observed seems similarly selective given the numerous entries in the medical evidence noting uncontrolled diabetes, edema and lesions in the lower extremities, chronic and diffuse pain, and loss of sensation in her hands.

The ALJ was also critical of the lack of functional limitations contained in the record. Yet Dr. Oudeh clearly offered opinions of plaintiff's various functional abilities. Such limitations have support in both the medical record and plaintiff's own statements. In discrediting such evidence, the ALJ failed to identify identifying substantial evidence to the contrary.

Thus, what effect plaintiff's conditions and their resulting limitations, including her apparent need to elevate her legs throughout the day, have on her RFC is unclear. Because the ALJ's decision contains no assessment of plaintiff's ability to perform relevant functions in the presence of contradictory evidence, the Court is unable to conduct a meaningful review. In sum, this case is similar to *Mascio*, where the court found the ALJ's RFC determination was "sorely lacking in the analysis needed" to conduct a meaningful review of the ALJ's conclusions. 780 F.3d at 636.

Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (citing *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)). On remand, the ALJ is to perform a function-by-function evaluation.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgement on the pleadings is GRANTED, the defendant's motion for judgment on the pleadings is DENIED. The decision of the Commissioner is REMANDED for further consideration.

SO ORDERED.

This __25__ day of ~~March~~ February, 2016.

_/s/ Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE